## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**DAVID W. KELLY, JR.,**
**Plaintiff,**

**v.**                                                    **Case No: 5:08cv71/MCR/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
**Defendant.**

_____

### REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Kelly's application for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff David Kelly filed applications for benefits claiming an onset of disability as of July 19, 2003.   The applications were denied initially and on reconsideration, and Mr. Kelly requested a hearing before an administrative law judge (ALJ).   A hearing was held on February 5, 2007 at which Mr. Kelly was represented by counsel and testified.   A vocational expert also testified.   The ALJ entered an unfavorable decision on May 18, 2007 (tr. 13-20).   Mr. Kelly requested review by the Appeals Council and submitted additional evidence.   The Appeals Council considered the new evidence but declined review on January 9, 2008 (tr. 4-7).   The Commissioner has therefore made a final decision, and the matter is subject to review in this court.   *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).   This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Mr. Kelly had a severe impairment of status post discectomy and fusion at L5-S1,  but that he did not have an impairment or combination of impairments that met or equaled one of the impairments listed in 20 C. F. R. Part 404, Subpart P; that he had the residual functional capacity to perform a wide range of sedentary work with some restrictions; that he was twenty-three years old with a high school education; that there were a significant number of jobs in the national economy that he could perform; and that he was not under a disability as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.

1986)).  There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).  Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence.  *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).  Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed.  *Ingram*, 496 F.3d at 1260;  *Miles*, 84 F.3d at 1400.  Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  *Moore*, 405 F.3d at 1211 (citation omitted).  In determining whether substantial evidence exists, the court  must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence.  *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that

the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits.  *See Moore,* 405 F.3d at 1211;  20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB).  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1.    Is the individual currently engaged in substantial gainful activity?

2.    Does the individual have any severe impairment?

3.    Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.    Does the individual have any impairments which prevent past relevant work?

5.    Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore,* 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)).  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987).  If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner.  *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

In July 2003 Mr. Kelly was injured in a motor vehicle accident.  After conservative emergency room treatments and injections by a primary care physician, an MRI revealed a disc protrusion at the L5-S1 level (tr. 219).  On February 13, 2004, James Maddox, M.D., an orthopedic surgeon, performed a posterior lumbar partial discectomy with interbody fusion at L5-S1 (tr. 175-76).  Mr. Kelly tolerated the procedure well and was discharged.  At his first follow-up appointment, the wound was well healed, neurological examination was normal and straight leg raising was negative.  Dr. Maddox felt that Mr. Kelly would be able to go back to driving trucks when he healed (tr. 212).  A month later Mr. Kelly told Dr. Maddox that he had recently hit his brakes hard to avoid an accident and "jerked" his back.  Examination disclosed only soreness.  Mr. Kelly was neurologically intact and his surgical wound was well healed.  X-rays showed good fusion and alignment in the low back, and Dr. Maddox felt Mr. Kelly was doing very well (*id*).

In late March Mr. Kelly began to complain of pain (tr. 209).  An MRI showed no abnormality (tr. 210).  Two days later Mr. Kelly went to the emergency room.  His physical examination was normal but for his complaints of pain, and he was given medication (tr. 296-300).  Mr. Kelly returned to Dr. Maddox on April 22, 2004.  He indicated that his left leg pain was somewhat better but that his right leg hurt worse than it had before the surgery.  He complained bitterly of the pain.  X-rays showed good fusion and alignment.  He was neurologically intact.  Dr. Maddox told Mr. Kelly that he would end his narcotic medication in a month, and that he needed to have a positive outlook on healing.  Finally, Dr. Maddox noted that the situation was negative subjectively but that the objective parameters looked fine (tr. 209).

On October 25, 2004 Mr. Kelly reported that he had fallen while fishing and complained bitterly about pain.  Straight leg raising was positive bilaterally but physical examination was otherwise normal and x-rays showed excellent results from the surgery (tr. 207).  Mr. Kelly went to the emergency room on April 12, 2005

and again on September 18, 2005.  Physical examination was normal on each occasion (tr. 218-93).  An October 3, 2005 MRI was read as normal other than mild/early degenerative changes in the mid-back (tr. 280).

On October 10, 2005 Mr. Kelly suffered a "quite small" apial pneumothorax. His treating physician, James Clemmons, M.D., noted that the nursing staff was "concerned that his complaints of pain [were] disproportionate to any obvious finding or cause of pain."  (Tr. 253).  The nurses indicated that he was expressing drug-seeking behavior and that he wanted pain medication whether he was awake or asleep.  He also asked the nurses to call Dr. Clemmons to request opiates.  Other than a small amount of air in the pleural space, Mr. Kelly's physical examination was normal (*id.*).  Dr. Clemmons indicated that he would prescribe pain medication as clinically indicated, "not just give large amounts of opiates solely at his request for specific amounts and/or the names of medications."  (Tr. 254).  The pneumothorax subsided in a short time, and Dr. Clemmons declined to put Mr. Kelly on chronic pain treatment indefinitely without consulting Dr. Maddox (tr. 258).

Over time Mr. Kelly continued to see Dr. Maddox.  In December 2005 he said he was doing well but that the pharmacy had made a mistake on his medications and would not give him any more (tr. 250).  In February 2006 he reported that his pain was reasonably under control, but the next month he claimed to have lost his medication (tr. 245-48).  In late June 2006 he told Dr. Clemmons that his entire bottle of pills had been stolen (tr. 244).  Dr. Clemmons finally put Mr. Kelly on methadone, which helped more than any other medication (tr. 240-41).

On November 29, 2006, Mr. Kelly was referred by his attorney to Brent Decker, Ph.D., a licensed psychologist, for a consultative psychological evaluation.  Mr. Kelly told Dr. Decker that he had never had any mental health care.  He said he was once very active, but now was anxious and depressed and was panicked around people. After an appropriate mental health examination Dr. Decker diagnosed major depressive disorder, pain disorder, and generalized anxiety disorder (tr. 260-264).

Dr. Decker completed a mental residual functional capacity assessment in which he opined that Mr. Kelly was moderately limited in his ability to remember and understand work-like procedures, to understand and remember simple and detailed instructions, to carry out simple and detailed instructions, to sustain ordinary routine without supervision, and to work in coordination with others without being distracted by them.  He further opined that Mr. Kelly had marked limitations in his ability to complete a normal workday without interruption from psychological symptoms, interact appropriately with the general public, to accept instructions appropriately from supervisors, to get along with coworkers and peers without distracting them, and to respond appropriately to changes in the work setting, and that he had marked restrictions in activities of daily living, extreme limitations in maintaining social functioning, marked difficulties in maintaining concentration, persistence, and pace; and had experienced three episodes of decompensation (tr 304-318).

## DISCUSSION

Mr. Kelly argues that the ALJ erred in (1) failing to credit the opinions of the treating physicians, (2) failing to find a listing level impairment, (3) improperly discrediting plaintiff's subjective complaints of pain and mental problems, and (4) improperly determining his residual functional capacity, and that he was disabled from his onset date as a matter of law.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that Mr. Kelly was not disabled, in light of his physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

**1.      Treating physicians.**

Mr. Kelly first contends that the records of his treating psychologist and treating physician mandated a finding of disabled.  Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "Good cause" exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 C. F. R. § 404.1527(d)(1); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005).   However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241.   Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

### A.   Dr. Decker.

The ALJ did not find that plaintiff had a severe mental impairment in this case. As noted above, at step two, the burden is on the claimant to establish the existence of a severe impairment.   20 C.F.R. § 1520(c), *Chester v. Bowen, supra.*   The Commissioner's regulations provide:

> What we mean by an impairment(s) that is not severe.
>
> (a) Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
> (b) Basic work activities.  When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include--

---

[1] *MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations;  and
(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521.  The Commissioner has adopted an interpretive ruling that specifically addresses how to determine whether medical impairments are severe. The ruling provides in part:

As explained in 20 C.F.R. §§ 404.1520, 404.1521, 416.920(c), and 416.921, at the second step of sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any SGA [substantial gainful activity]. An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Thus, even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA.

SSR 85-28, 1985 WL 56856.

Although Dr. Decker examined Mr. Kelly at his attorney's request, Dr. Decker was not a treating physician.  For that reason alone, his opinions are not entitled to the weight Mr. Kelly urges.  *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984). Furthermore, as the ALJ noted, Mr. Kelly had never sought mental health care, and there was no recommendation by any of his treating physicians that he consult a mental health professional.

Plaintiff testified that his depression was disabling, but the ALJ did not have to accept that testimony entirely, and she did not.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain [or other subjective conditions]." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[2]  People with objectively identical conditions can experience them in significantly different ways, and symptoms including pain or depression are more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand, supra,* at 1548-49.  It is within the ALJ's "realm of judging" to determine that "the quantum of pain [or other subjective complaints a claimant] allege[s] [is] not credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984).   The same analysis can be applied to a diagnosis of depression.  Thus, a psychologist may be told by a patient that he or she is depressed to a great degree, and the psychologist may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a psychologist's opinion, is the basis for the ALJ's credibility determination.  Here there was substantial record evidence to support the ALJ's determination that Mr. Kelly's depression was not severe, and he is not entitled to reversal on that ground.

      B.    <u>Dr. Clemmons.</u>

---

[2]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

Mr. Kelly next argues that the ALJ should have given great weight to the opinion of Dr. Clemmons.  He faults the ALJ for pointing to Mr. Kelly's apparent drug-seeking behavior when he had a pneumothorax, and says that this had nothing to do with his back problems.  That argument goes to the weight of the evidence only.  The medical record is full of indications that Mr. Kelly's approach to pain medication was inappropriate.  He asked nurses to administer certain drugs, by name and he asked them to call Dr. Clemmons for those drugs.  He had multiple episodes of alleged stolen drugs, lost drugs, and pharmacy errors, which was also relevant evidence. The ALJ's notation of Dr. Clemmons's concern for the "disproportionate nature of [Mr. Kelly's] complaints and express concerns about the recurrent requests for pain medication" was relevant and was supported by substantial record evidence (tr. 18).  Finally, Dr. Clemmons did not state an opinion that Mr. Kelly had significant work-related restrictions, nor did Dr. Maddox.  Mr. Kelly has not shown error, and he is not entitled to reversal on this ground.

2.    Listed impairment.

Mr. Kelly next contends that the ALJ erred in not finding that his mental condition met or equaled a listed impairment, and that she further erred in not filling out a psychiatric technique form.  As to the listing, the regulations promulgated by the Commissioner at Appendix 1, Subpart P, set out specific physical and mental conditions that are presumptively disabling.  If a claimant meets the requirements of one of the listings, no further proof of disability is required.  *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  However, as discussed above, the ALJ did not err when she found that Mr. Kelly's mental impairment was not severe.   This determination is made at step two of the sequential process.  If a mental impairment is not severe, it cannot meet or equal a listing.

As to the psychiatric technique form, the same reasoning applies.  The form is required only if a mental condition is found to be severe.  *Moore v. Barnhart*, 405 F.3d 408 (11th Cir. 2005).

3.   <u>Subjective complaints of pain and residual functional capacity.</u>

Finally, Mr. Kelly contends that the ALJ erred in discounting his subjective complaints of pain and in determining his residual functional capacity. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[3] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

---

[3]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054.  Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true.  *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an  explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted).  And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

As with the issue concerning Mr. Kelly's mental impairment, a pain assessment also requires an overall credibility determination, in which the ALJ must resolve the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints.  *Scharlow v. Schweiker, supra*.  And as with the mental impairment findings, the ALJ was supported by substantial record evidence in holding "that [Mr. Kelly's] medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (Tr. 18).

For the same reason, there was substantial record evidence to support the ALJ's finding that Mr. Kelly's residual functional capacity was such that he could perform a wide range of sedentary work, and that a significant number of jobs existed in the economy which he could perform.

Accordingly, it is respectfully RECOMMENDED that the Commissioner's decision be AFFIRMED, that judgment be entered in favor of the defendant, and that the clerk be directed to close the file.

At Pensacola, Florida this 4th day of March, 2009.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**